Good morning, one and all. First case, please tell me if I'm pronouncing it right. Just give me a moment. I will be glorying when you do your thing, please, in court. Go ahead, thank you. Good morning, your honors. May it please the court, my name is Douglas Grannon, appearing on behalf of Petitioner Appellant Adel Dessouki. If I may, I'd like to reserve four minutes of rebuttal time. Very well, go ahead, sir. Thank you. We are here today regarding Mr. Dessouki's claim to United States citizenship. As the voluminous administrative record documents, this case has a long and tortured history, but it boils down to a relatively simple question regarding the application of the former 8 U.S.C. 1432-A-5. So your view is the case rises and falls on whether he's a citizen or not, right? There aren't any other attendant issues, but that is the central issue. So if we rule that your client is a U.S. citizen, I presume that precludes the necessity to address the issues pertaining to the underlying removal order, since citizens can't be subject to removal, right? That would obviate the removal aspect. And it should also move the N-600 and the Section 1503-A issue, correct? Those issues provide a very important framework to the central issue, but the 1432-A-5 is the primary issue. So here's what I don't understand, then. When you look at 1432, A-3, A-4, and A-5 are conjunctive, right? So if they're conjunctive, and I presume you concede your client doesn't need A-3, how can we go any further with A-5 in our analysis if A-3, A-4, and A-5 are conjunctive? Your Honor, I don't concede that A-3 isn't met. You're not going to say that again? I do not concede that A-3 is not met. Oh, you believe A-3 is met? Yes, Your Honor. And how do you mean A-3? Your Honor, the Subsection A-3 requires legal custody, which I don't believe is in dispute at any point below. Mr. Suzuki lived with his United States citizen father, not immediately, but within one or two years after his arrival at the age of one. That was the first immigration judge's conclusion, is that right? That the custody problem was met? Yes. Yes, Your Honor. Yes, but a second immigration judge said that's not the case at all, because the mother apparently was not involved in the proceeding. She was involved in the proceeding inasmuch as she filed the first green card, excuse me, application for lawful permanent residence for Mr. Suzuki, which most people refer to. Well, maybe we can cut through this. Your client was born out of wedlock. He was. The parents were not married at the time, but then there couldn't be a legal separation if they weren't wedded. Your Honor, the statute makes no requirement that marriage is a precondition to a legal separation. I'm sorry, that's what a legal separation means at law. Do you have any authority to the contrary? Your Honor, in both the Second Circuit cases that we cited in our brief, Ashton and Watson, the requirement of marriage was not mentioned by the Second Circuit. Your Honor, not mentioned is much different than getting around what is clear statutory language, right? You say the naturalization of the parent having legal custody of the child, you have that, but here's the clause that is critical. When there has been a legal separation of the parents, Your Honor, the naturalization of if the child was born out of wedlock and the paternity of the child has not been established by legitimation, help us. Your Honor, this Court last visited this issue regarding marriage in the context of 1432 in Morgan v. Attorney General, and since that time there's been considerable amount of change in the landscape of domestic law, specifically the overruling of the Defense of Marriage Act. Counselor, have you at any point made a constitutional challenge to this statute or preserved any argument challenging the validity of this statute? Your Honor, the statute is valid as it sits. Well, we interpret statutes in light of what they meant at the time that they were enacted, and so you've effectively conceded that legal separation has always meant this. Maybe in theory you could have brought some other challenge. Your Honor, I don't believe I conceded legal separation is required. A marriage is required to form legal separation. Well, what do you do with the term that's in the statute? It presupposes a legal separation. What do you do, just ignore that? No, I don't, Your Honor. There's nothing requiring marriage to be a condition of legal separation. Let's look at the rest of the statute. It has a series of conditions for when the parties have been married and a series of conditions for when they have not been married. It treats out-of-wedlock births differently, and you haven't made any challenge to the constitutionality of that. So the statute is only read as here's the route you go if the parents were not married, and here's the route you go if the parents were married. I don't understand how you can stretch legal separation to swallow up or expand the distinctive categories for out-of-wedlock births. Your Honor, the statute makes a distinction if the naturalization of the parent is the mother, not the father. That's the distinction for out-of-wedlock, so it doesn't apply to Mr. D'Souky's case. So only the mother, then, could obtain citizenship if the child is born out-of-wedlock. The father cannot. Is that what you're saying? No, Your Honor. I'm saying that they've set an extra condition for the mother in the statute. This doesn't apply to Mr. D'Souky's case. His father is the person who naturalized. It's not an extra condition. In Wynn v. Zion Best, the Supreme Court interpreted and said, no, the law has long treated the relationship of children born out-of-wedlock to their fathers and to their mothers differently for purposes of making sure that certain children are not stateless. So I don't see how you can say you get out from under this because he does not satisfy the second half of three. That seems to be he runs up against a wall there. Your Honor, we dealt with that in our brief. We cited to Ashton and to Woodson in the Second Circuit. That is the authority that places no importance on the institution of marriage as it relates to legal separation. What you seem to be saying is, in your view, the Second Circuit has looked at A3 and not focused on legal separation. Well, that's wonderful for the Second Circuit, but we are focusing on legal separation. So the question is, what is the support you have for the notion that you're propounding with regard to legal separation not being related to marriage? It's obviously a condition proceeding. You can't have legal separation without marriage. The word marriage does not appear in the statute, and the Court's review of this issue in Morgan in 2005, I think, states directly they're not stating marriages are required. They're saying we're going to look at the law of the land in Pennsylvania and in Jamaica, the two jurisdictions that apply to Morgan. Counselor? If you have any other authority, I'd be very welcome to hear more authority on this point. If you don't have any other authorities to cite, I hope we can talk a little bit about how we sequence our approach to this. Ordinarily, we are supposed to, under Steele Company, address jurisdictional issues before we get to merits issues. This looks like a merits issue, and yet you and the government both take the position that the citizenship issue comes first, and then there are these jurisdictional issues that would only then get to the merits issues. It's very odd to say that we jump straight to citizenship. Why is that your position, and is there authority for it? Your Honor, the facts in this case are very idiosyncratic, and that has led us to this being the court that essentially, the first federal court, that is dealing with the issue of Mr. DeSutti's citizenship. We attempted to deal with it before Judge Savage, following the denial of the N-600. Okay, but should we deal with this first, or should we first try to get, deal with the regulatory post-departure bar of Lozada and tolling under Desai and, you know, these other issues about whether, you know, you've raised the issue before removal proceedings, and that bar is the district court. Should we be sequencing those issues before we get to citizenship? I believe the citizenship issue is the central issue, and this is essentially Mr. DeSutti's first day in federal court. Yes or no, do those issues come before this one in our analysis, or do we address this first? To me, I would address this first. What's your authority for that? Your authority for placing this before the jurisdictional issues? Your Honor, it's the court's decision on how they decide to deal with these. To me, the central issue is, is Mr. DeSutti a United States citizen? The other issues are attendant to that one. Well, I presume you want us to overrule the decision of the district court, right? The district court said it didn't have jurisdiction, so you want us to say that we have jurisdiction, right? I agree, yes. So that would mean that issue would have to be decided before we get to citizenship. And we spend a considerable amount of time in our brief regarding all those other attendant issues. Right. So the question is, do we deal with those, as you say, attendant issues before we deal with citizenship? It's at the court's discretion. To me, the citizenship is the central issue. I'm happy to discuss any of the other issues as well. At least the district court's decision that it did not have jurisdiction. I'm sorry, Your Honor? The district court's decision that it did not have jurisdiction. Yes, Your Honor. Could you at least address that jurisdiction? Yes, Your Honor. In the Seventh Circuit, Ortega v. Holder clearly talks about the intent behind 1503 as a way to free the court, the district court, of very tenuous or speculative claims to United States citizenship. And the intent that the government seeks to give... I'm sorry, Your Honor. My time is up. The intent that the government attempts to give it basically ensures that no person who's ever put in removal proceedings would ever be able to raise a claim of this nature in district court. That's not the intent of the statute, and Ortega holds that squarely. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Elizabeth Fitzgerald Sandoval on behalf of Respondent and Appellees. This is an immigration case involving Mr. Disuki's repeated attempts over the past decade or so to have the U.S. government declare him a U.S. citizen, and he's been unsuccessful because he does not meet the citizenship requirements. So that's why the Department of Homeland Security and the Department of Justice have both stated that he's not a U.S. citizen. Disuki makes the same claim before this Court, today, and in his briefs, but this Court should say first that he's not a U.S. citizen. Counselor, why, as a sequencing matter, in your brief and your presentation, you put citizenship first when, under Steele Company, we ordinarily expect to run through jurisdictional issues before we get to what looks like a merits issue? Yes, Your Honor. So the government's position is that the citizenship issue is a jurisdictional issue, and that's because, at least with the petitions for review under AUC-1252-B-5A, there... Could you go back for a moment? Did you say the citizenship issue is jurisdictional? Yes, Your Honor. Does that mean that we address the citizenship issue first? Yes, that's our position. And the reason for that is because, in that section of the INA in 1252, the INA orders this Court, or says that this Court shall decide U.S. citizenship if a nationality claim is raised. And the reason for that is because if the individual is actually a U.S. citizen, then they should never be in removal proceedings in the first place. But he says if there are no genuine disputes... Actually, I think it says genuine issues of material fact. Correct. He says if there are, then you should send it back for that to be decided. Correct, Your Honor. So here, there are no genuine issues of material fact, or at least both parties have agreed that the facts are not disputed, or at least the material facts are not disputed. So both subsections A and B come first. They're both jurisdictional. So our position is that if there was a genuine issue of material fact, this should then go to a district court under that. Help me to understand the theory. Is the theory that these administrative agencies are bodies of limited jurisdiction and lack power over U.S. citizens? Is that your reading of the statute? Or at least our reading is that the INA doesn't apply to them. So at least in the context of removal proceedings, which is then adjudicated by the Executive Office for Immigration Review, they don't have authority to order a citizen removed. So here, that's what occurred. And the petitions for review are seeking review of a final removal order. So the removal order would be invalid if the person is actually a U.S. citizen. So the OIR lacks power over them. So it's jurisdictional, but it's a jurisdictional issue that also happens to be the underlying merits issue. And so if we rule in the government's favor, is there anything left to remand if we find error on the jurisdictional rulings after this? What happens? No, Your Honor. Our position is that the remaining issues would be moved. And the reason for that is I guess there are two reasons. So as far as the motions to reopen, which are raised through the petitions for review in this case, there that would be moved because, at least, so this Court lacks jurisdiction over a sui sponte motion to reopen. There's plenty of precedent from this Court on that issue. But even if this Court were to assume that it was a statutory motion to reopen because it was based on ineffective assistance of counsel. I found it very interesting. I don't want to overlook this point, that an immigration judge found Dasuki was a citizen of the United States, made that determination. And then because of subsequent events, that decision was apparently overturned by another immigration judge. Could you talk about this issue of maybe Ray Giudicata and why the matter didn't go back to the first immigration judge but a different judge made a completely different ruling? Sure, Your Honor. So in immigration proceedings, technically the immigration judges can't declare someone a U.S. citizen. Really what they're doing is determining alienage. So in a case such as this, the Department of Homeland Security, who acts as the prosecutor in removal proceedings, they bear the burden of proof to show that the individual is actually an alien and not a U.S. citizen. So here, what the first immigration judge decided was that the Department of Homeland Security failed to meet their burden of proof of showing that Dasuki was an alien. So there, that's why the immigration judge terminated the removal proceedings. But although, in essence, it actually is the judge deciding he's a U.S. citizen, that immigration judge lacks authority to confer citizenship on that individual. The individual would then have to either obtain a certificate of citizenship from the Department of Homeland Security or a U.S. passport from the State Department. So those two forms that I just said are the actual sort of like statements from the U.S. government that that individual is a citizen. And so here, the record is not entirely clear as to why a different immigration judge was assigned later. Generally speaking, the case stays with the same immigration judge. So I would assume, although I'm not positive, that most likely the first immigration judge either retired or left UIR or his position as an immigration judge. That's likely why it just went to a different immigration judge later. So the judge cannot make that decision. It's a process that goes through INA, Immigration and Immigration Services. That's where citizenship would be conferred. Is that correct? Well, currently, the Department of Justice is the immigration court proceeding. So that's where the immigration judges are located. So they only determine alienage. They don't actually confer citizenship. So it's the Department of Homeland Security through U.S. Citizenship and Immigration Services that could actually issue someone a Certificate of Citizenship, which is that Form N-600 that Suzuki twice applied for. Or the State Department, a totally different agency, could give someone a U.S. passport. So it's either Department of Homeland Security or Department of State that actually issues a document that that person could then use to show that they're actually a U.S. citizen. So could you talk a little bit about the issue in the district court proceeding about Section 1503A? If the issue of citizenship arose in connection with a removal proceeding, it arose back in 2007, and for some reason that's pending for more than a decade, and then we have this – we have Suzuki coming into the U.S.CIS, and now there's another motion on the table. The Fifth Circuit has found a potential exception. It didn't apply in that case, saying that the fact that you moved a decade – years ago doesn't necessarily mean you're forever precluded from this. We suggested the same in a non-presidential opinion, but the language of the statute says any – if it's an issue in any removal proceeding, that's the end of the story. What's the government's position on that and why? The government's position is just that what the statute said, that if the citizenship issue arose in the context of removal proceedings in general, then the district court is precluded from reviewing that through an AUSC 1503A action. And so here we think it's very clear that – Can you explain the functional logic of what the two pathways are, and is someone supposed to be choosing one or the other and not getting two bites at the apple? Help me to understand how this fits together. Sure, Your Honor. So as I said, there are two separate tracks for making citizenship claims, and Congress designed it so that those tracks would be separate. So as other circuit courts have recognized in the cases that I cited in my brief, the reason to keep the tracks separate is to avoid confusion and avoid delaying removal proceedings, as what occurred in this case. But essentially, if someone raises a citizenship claim in removal proceedings, they then raise that to the Executive Office for Immigration Review. And then if there's a final order of removal, then through a petition for review and under AUSC 1252B5, that person could then assert their U.S. citizenship claim to this court or the Court of Appeals and say – and this court, the language of the INA says this court shall decide the U.S. citizenship claim. And that's what the SUCI could do in this case. Yes, exactly. And that's what he is doing now by asserting that he's a U.S. citizen to this court. And that's why the government believes it's a jurisdictional issue that this court should decide first. So the second track under AUSC 1503A is where that individual files an N-600 application with the Department of Homeland Security, which is a request for a certificate of citizenship, which, as I said, is a document that the Department of Homeland Security essentially declares that person a U.S. citizen. So here, if that's denied by the Department of Homeland Security, then that individual could then file a claim with the district court under AUSC 1503A. And then if that person did so separate from removal proceedings, then that's how that individual gets judicial review of the citizenship issue. So the reason why the tracks are separate, or at least what other circuit courts have said, is because essentially the statute – Congress designed the statute so that an individual would always be able to get judicial review of a citizenship claim, but it shouldn't be overlapping review. So, for example, if these cases here were not consolidated, you would have – or if that provision wasn't there, you would have the district court deciding citizenship and also this court deciding citizenship through 1252b-5. And if that ever conflicted, that would just create confusion, and the 1503A action could also delay removal proceedings as well. Our case, then, is squarely within the district court track. Oh, I'm sorry, Your Honor. Our case, this one. The suitee is within the district court track, within the court track, not the Department of Homeland Security. Is that accurate? Well, he's trying to use both tracks. And so now both tracks are before this court within these three consolidated cases. So your point, if I'm understanding it correctly, is put aside 1503 because of the removal proceeding, used 1252, and the reason that 1252 doesn't work is because 1432a-3 is a disqualifying factor. Correct, Your Honor. Because the evidence shows that the suitee raised a citizenship claim in removal proceedings by filing motions to terminate directly with the immigration judge and filing two N-600 applications with the Department of Homeland Security immediately or months after he was placed in removal proceedings and after the Department of Homeland Security filed a motion to reopen his removal proceedings, it's clear, as the district court found, that he requested citizenship in the context of removal. And even in his opening brief, he stated he raised it as a defense to removal. So here, that's why this court lacks jurisdiction, as the district court does, over the 1503a action because the statute precludes review in that context. Right. So you're arguing that we should affirm dismissal on that ground because they lack jurisdiction and we lack jurisdiction on the other two. You're saying we should dismiss the petition, deny the petitions for review, I guess it is, on the ground that he's a U.S. citizen. Correct, Your Honor. Or it could be dismissed because he's not a U.S. citizen and this court lacks jurisdiction over the motions to reopen that the board denied. The problem with the motions to reopen, it sounds like we don't need to get there, but if we do get there, your argument on the motions to reopen depends on the statutory post-departure bar. But the I.J. rested on the statutory post-departure bar. But the board did not invoke the statutory post-departure bar. The board invoked the regulatory post-departure bar. The regulatory post-departure bar is subject to Lozada and Desai and equitable tolling, in which case we wouldn't lack jurisdiction. We would have to remand to decide if equitable tolling applied, in which case it might be appropriate. We wouldn't view this sui sponte reopening as completely beyond our jurisdiction. Two things, Your Honor. First, the immigration judge relied on the reinstatement bar. So in this case, the suicide removal order was reinstated by the Department of Homeland Security. So that reinstated order is not in the records that we have. So that's what the immigration judge relied on, but there's no evidence of it in the record, although I have been informed by the Department of Homeland Security that it did happen. We can't, we can't. Right, so this court should have relied on that. The board reviewed de novo and gave it different reasons. So the board relied on the regulatory post-departure bar and held basically that the motion to reopen was a sui sponte request. Because it was untimely, he never stated why he met the time requirement. He never requested equitable tolling or said how he met that requirement. And he never satisfied the ineffective assistance of counsel requirements. So the agency, or at least the board, treated it as a sui sponte motion to reopen, which is just the board's own discretion whether it should reopen. And in that case, this court has held in Desai that it's appropriate to apply the post-departure bar. However, as I began to say earlier, even if this court were to assume that the board inappropriately treated it as a sui sponte motion to reopen and that it should have treated it as a statutory ineffective assistance of counsel motion, this whole issue would be moot because he's not a U.S. citizen. So in an ineffective assistance of counsel claim, the individual has to show prejudice. So here, the whole entire basis of his ineffective assistance of counsel claim is that he was prejudiced because his two former counsels didn't properly assert this U.S. citizenship claim. So because that's the entire claim and he's never been a U.S. citizen, then there's no prejudice here at all. Very hard to follow that procedural nightmare that you have laid out. But let me say this. I find it somewhat sympathetic because we're talking about a person who has been in the United States virtually his entire life. He is about to be sent back to France, probably can't speak a word of French, or he might, but for all intents and purposes, he's an American. Does he not have any avenue that he can pursue in order to get citizenship? Well, Your Honor, the government agrees that this is a sympathetic case, but in the end, the requirements have to be met. It's kind of like a too bad response. Well, Your Honor, I mean, it is... I guess the law is what it is, I understand. De Succhi's problem now is that he has a criminal history, so now he's removable for that reason. So here, even if he did not derive citizenship, which is an automatic conferral of citizenship, which is why it's very important that all requirements are met, an individual could still become a lawful permanent resident and then wait the five years and naturalize later. So De Succhi had that option. He would have to go through the removal process first. Well, now that he's in remote proceedings, it creates a problem for him because he is removable for the various reasons that he was ordered removed. But essentially, if that had not occurred, if he had tried before he had his criminal history, then he could have become a U.S. citizen that way, and he just chose not to order his entire lifespan to try that attempt. So that's fine. But if there are no further questions, then the government would, again, urge this court to first decide that De Succhi is not a U.S. citizen for the reasons stated in our brief and then decide that it lacks jurisdiction or affirm the district court's decision and then determine that it lacks jurisdiction as soon as Bontay motions to reopen, and the petition is forwarded to you. Thank you so much. Thank you. Excuse me. I'm here as an initial threshold matter in response to the question regarding material facts. We do not agree that all material facts are agreed upon. What material fact would you still like to look at? That he completed every aspect of the adjustment of status quo. What fact do you think he completed that they're disputing? We submitted the application or, excuse me, he submitted the applications. They were properly before the USCIS and remain properly before USCIS to this day. Their failure to act on them in over 25 years speaks largely to their bungling of his entire administrative matter. Have you asked them for status? What is pending? They now claim after he is physically removed from the United States that his application was withdrawn, which it was not withdrawn properly under the regulations. They have a document that says his attorney withdrew one of his applications, and then they claimed the other one that his father filed was rejected for an improper fee when a photocopy of the appropriate fee at that time is stapled to the front of the application that we got during the discovery before the testimony. Is this in your brief? It is, Your Honor. Where? There is a section regarding multiple constitutional violations. I'd be happy to look at you. Page 26, Room 32. Okay. Thank you. USCIS has mishandled Mr. Tasuki's applications from the outset of this matter. He should have been adjudicated to be a lawful permanent resident. Cases involving minor children are rarely, if ever, interviewed. Once the parent is adjudicated to be a lawful permanent resident or a citizen, if there's an issue to the biological relationship, a DNA test is ordered. None of that happened. Mr. Tasuki's file sat unattended for more than 20 years. But that only goes to 8-5, if I understand it, right? So you still have your 8-3 problem. After that, he still would have been able to assert his claim to citizenship, that if he had been adjudicated a lawful permanent resident, I think the government's position would have been very different much earlier in this process. I can't speculate on that, but 8-3, 8-4, and 8-5 are still conjunctive. So that's a possible pathway to supporting your claim on 8-5, but that's it. Well, that's one of the many important factors that we believe outlines why Mr. Tasuki is, in fact, a United States citizen. Your Honor has posed several questions regarding the administrative history of this case, which is extremely confusing, I admit. Mr. Tasuki has not been in removal proceedings for more than, I think, six years. He was physically removed from the United States. There is no immigration proceeding that is currently holding him at all. Well, what's his current status? He's subject to a final order of removal. He's awaiting removal by the Department of Homeland Security and has been waiting for the last five and a half months. And you asked a question? I'm so sorry. You said he was physically removed. Yes, to France. He returned. He's in France. No, no, he's in custody right now in Philadelphia. He is prepared. He was removed. He accepted a guilty plea in front of Judge Savage because he had waited more than two years for his removal and was physically unable to take it anyway. Also, you asked a question about the immigration judges. Mr. Tasuki was detained when Judge Sterling found him to be a United States citizen in terminated proceedings. The government then waited two years, far in excess of the 90-day time limit, to reopen his cases because he was no longer in jail. His case was reassigned to an immigration judge on the non-detained docket. What are you requesting of this Court at this point? That they find him to be a United States citizen in the alternative. No, no, we can't decide his citizenship. What are you asking us to do with the pending case? To remand it back to Judge Savage with direction to adjudicate his effort to review his N-600. Back to Judge Savage? Yes, sir. On what basis? As I said earlier, Ortega v. Holder, here on a Seventh Circuit case, talks about how 1503A is not meant to cleave this Court of Jurisdiction or the District Court of Jurisdiction to review the nuts and bolts of a citizenship claim. Do you believe this problem? No. No. Thank you very much. Thank you, Counsel, for a well-argued case. We'll take it under advisement.